IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

SAMMY CASWELL,

                Petitioner,

      vs.

PATRICK GRIFFIN, Superintendent,
Southport Correctional Facility,

                Respondent.

No. 9:10-cv-01498-JKS

MEMORANDUM DECISION

Sammy Caswell, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Caswell is currently in the custody of the New York Department of Corrections and Community Supervision, incarcerated at the Southport Correctional Facility.  Respondent has answered.  Caswell has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Caswell was convicted by a jury of two counts of Criminal Sale of a Controlled Substance (N.Y. Penal Law § 220.39[1]) and two counts of Criminal Possession of a Controlled Substance (N.Y. Criminal Law § 220.16[1]).  In May 2006 the Cayuga County Court sentenced Caswell, as a second felony offender, to a determinate sentence of twelve years on each count, to be served concurrently, followed by a three and one-half year term of supervised release.  The Appellate Division, Fourth Appellate Department, affirmed Caswell's conviction and sentence in a reasoned, published decision, and the New York Court of Appeals denied leave to appeal on August 13, 2008.[1]

---

[1] *People v. Caswell*, 856 N.Y.S.2d 338 (App. Div.), *lv. denied*, 894 N.E.2d 657 (N.Y.
(continued...)

On March 26, 2009, Caswell, appearing *pro se*, filed a motion to vacate the judgment under N.Y. Criminal Procedure Law § 440.10 ("CPL 440.10 motion") in the Cayuga County Court, which was denied in an unpublished reasoned decision on July 16, 2009.  The Cayuga County Court denied Caswell's subsequent motion to vacate and reargue the July 16, 2009, order on December 17, 2009.  Caswell did not appeal from the denial of his CPL § 440.10 motion.  On January 6, 2010, Caswell then filed a motion for a writ of error *coram nobis* in the Appellate Division, which was summarily denied without opinion or citation to authority, and the New York Court of Appeals denied leave to appeal on August 3, 2010.[2]  Caswell timely filed his Petition for relief in this Court on November 5, 2010.

Because the facts are unnecessary to a determination of the grounds raised, they are not repeated here.

## II.  GROUNDS RAISED/DEFENSES

Caswell raises eight grounds:  (1) actual innocence; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; (4) judicial misconduct; (5) improper introduction of audio recordings and transcripts into evidence; (6) prosecutorial misconduct; (7) police misconduct; and (8) that the trial court erred in denying Caswell the opportunity to call witnesses.  The Respondent asserts that Caswell's first (actual innocence), second (ineffective assistance of counsel), fourth (judicial misconduct), fifth (introduction of audio recordings),

---

[1](...continued)
2008) (Table) ("*Caswell I*").

[2] *People v. Caswell*, 896 N.Y.S.2d 277 (App. Div.) (Table), 934 N.E.2d 896 (N.Y. 2010) (Table) ("*Caswell II*").

2

seventh (prosecutorial misconduct), and eighth (police misconduct) claims are wholly or partial unexhausted.  Respondent raise no other affirmative defense.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412 (alteration added).

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

be "objectively unreasonable," not just "incorrect or erroneous."[7]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Caswell "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[11]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

---

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[12]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[13]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14]  Although pre-AEDPA precedent established that deference is due to the findings of state appellate courts,[15] the Second Circuit has left the question open with respect to AEDPA cases.[16]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

Caswell has not filed a reply to Respondent's answer.  28 U.S.C. § 2248 provides:

The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Ordinarily, under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal and unsupported by an evidentiary basis, the court must accept

---

[12] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[13] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . ."); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[14] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[15] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[16] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

Respondent's allegations.[17]  Where there is no traverse filed and no evidence offered to

contradict the allegations of the return, they must be accepted as true.[18]

IV.  DISCUSSION

**A.     Exhaustion**

This Court may not consider claims that have not been fairly presented to the state

courts.[19]  This Court must dismiss the unexhausted claims.[20]  On July 1, 2011, this Court granted

Caswell a stay to permit him to exhaust his unexhausted claims.[21]  The stay was vacated on

March 26, 2012, by a Text Order, which was served on the parties by mail on the same date.

Subsequently, this Court, noting that the issues raised by Caswell in his CPL § 440.10 were

technically unexhausted, requested that Respondent signify whether or not the failure to exhaust

defense was waived.[22]  Through a letter brief `filed on June 25, Respondent indicated that the

failure to exhaust defense was not waived.[23]  Caswell has not replied to Respondent's contentions

that some of the grounds asserted are either wholly or partially unexhausted.  Consequently, this

Court will dismiss those claims that the record establishes have not been properly exhausted

without reaching the merits.

---

[17] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[18] *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per curiam).

[19] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[20] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[21] Docket No. 15.

[22] Docket No. 23.

[23] Docket No. 24.

The claim must have been presented to the highest state court that may consider the issue presented.[24]   "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."[25]   A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the substance of a constitutional claim to the state courts.[26]   A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the appropriate state courts.[27]   An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state-court proceedings, irrespective of the label used.[28] Exhaustion does not require the petitioner to cite the "book and verse on the federal constitution."[29]   A petitioner who does not cite the "book and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[30]

---

[24] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[25] *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

[26] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[27] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[28] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[29] *Picard v. Connor*, 404 U.S. 270, 278 (1971).

[30] *Daye v. Attorney General of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[31]  Claims are fairly presented to the New York Court of Appeals when the application for leave to appeal clearly states that all claims in the attached brief are being pressed, or no arguments are made in detail and the application simply requests review of all issues outlined in the brief.[32]  Where the application for leave to appeal refers to specific claims raised before the Appellate Division but omits mention of others, the unmentioned claims are deemed abandoned.[33]  Where the application for leave to appeal argues one or more specific claims but only makes a passing reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals.[34]  Under New York law, a claim raised for the first time in a reply brief is not properly presented to the reviewing court.[35]  A claim raised for the first time in an application for discretionary review has not been properly exhausted.[36]

---

[31] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

[32] *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see also Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000) (the application for leave to appeal did not specify any particular issue for review, but enclosed the briefs filed in the Appellate Division and requested the Court of Appeals to consider and review all issues raised in the appellant's brief and *pro se* supplemental brief).

[33] *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

[34] *Jordan*, 206 F.3d at 198.

[35] *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).

[36] *St. Helens v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

8

A criminal defendant may seek further review of the denial of a N.Y. Criminal Procedure § 440.10 or § 440.20 motion in the Appellate Division.[37]  A CPL § 440.10 motion is not the proper vehicle under New York law in which to challenge the effectiveness of appellate counsel. Instead, an ineffective assistance of appellate counsel claim is properly raised by a common law writ of error *coram nobis* in the appellate tribunal in which the allegedly deficient appeal was brought.[38]

As applied to this case, unexhausted claims fall into two categories:  (1) claims that were raised solely in the CPL § 440.10 motion; and (2) those claims, or part(s) of any claim, that were not properly raised on federal grounds on direct appeal or in Caswell's motion for a writ of error *coram nobis*.  All claims, to the extent the claim was properly raised on direct appeal or in his motion for a writ of error *coram nobis*, will be decided on the merits.

The following grounds were raised solely in Caswell's CPL § 440.10 motion, and are, therefore, unexhausted:  first (actual innocence);[39] sixth (prosecutorial misconduct); and seventh (police misconduct).  Thus, those three grounds are dismissed in their entirety.

In his application for leave to appeal to the N.Y. Court of Appeals, Caswell raised six claims:

> 1) that the jury's verdict of guilty was against the weight of the evidence and legally
> insufficient; 2) that the trial court improperly allowed the use of transcripts of audio
> recordings in violation of [Caswell's] constitutional and statutory rights to due

---

[37] N.Y. Crim. Proc. Law §§ 450.15, 460.15; N.Y. Comp. Code & Regs. tit. 22, § 800.3.

[38] *People v. Bachert*, 509 N.E.2d 318, 321-23 (N.Y. 1987).

[39] The Court also notes that the Supreme Court has never held that a freestanding claim of innocence is cognizable in a § 2254 petition filed by a non-capital defendant.  *See House v. Bell*, 547 U.S. 518, 554-55 (2006); *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009).

9

process and a fair trial; 3) that the failure of the trial court to allow Deputy Egan to testify as to [Caswell's] incarceration in Onondaga County from December 27, 2004 through April 21, 2005, was an error that was prejudicial to [Caswell] and that denied [Caswell] his constitutional and statutory rights to a fair trial and due process of law; 4) that the trial court improperly admitted two audio recordings into evidence in violation of [Caswell's] statutory and constitutional rights to due process and a fair trial; 5) that the trial court's *Sandoval* ruling denied [Caswell] his constitutional and statutory rights to due process and a fair trial; and 6) that the sentence imposed on the [Caswell] was harsh and excessive and should be reversed or modified in the interests of justice.[40]

These claims, to the extent that Caswell has also raised them in his Petition in this Court, will be addressed on the merits.[41]

**B.   Merits**

Ground 3:  Ineffective Assistance of Appellate Counsel

In his Petition, Caswell alleges that he was denied the effective assistance of appellate counsel because:

Appellate counsel inadequately represented [Caswell] by drafting issues that was [*sic*] not supported by the record, and omitted meritorious issues that was [*sic*] supported by the record and which reversal could have been obtained most of these meritorious issues could easily been gleamed from the record upon diligent research of the file and record.  Clearly these omissions cannot be deemed strategic.[42]

In denying Caswell's *coram nobis* motion in which he raised these issues, the Appellate Division held:

Now, upon reading and filing the affidavit of Sammy Caswell sworn to January 7, 2010, the notice of motion with proof of service thereof, the opposing

----

[40] Docket No. 12-6 at 3.

[41] The Court notes that Caswell's second ground (ineffective assistance of counsel) was not raised in his application for leave to appeal.  Accordingly, that ground is entirely unexhausted.  *See Jordan*, 206 F.3d at 198.

[42] Docket No. 1 at 5.

affirmation of Christopher W. Schlecht sworn to January 28, 2010, and due deliberation having been had thereon,

It is hereby ORDERED that the motion be and the same hereby is denied.[43]

Under *Strickland,* to demonstrate ineffective assistance of counsel, Caswell must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[44]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[45]  Caswell must show that appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[46]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[47]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule,

---

[43] Docket No. 12-22 at 2.

[44] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[45] *Id*.

[46] *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[47] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

the more leeway courts have in reaching outcomes in case-by-case determinations").[48]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[49]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different from an *incorrect* application of federal law."[50]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[51]

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[52]  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while

---

[48] *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[49] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[50] *Richter*, 131 S. Ct. at 785 (emphasis in the original); *see Rosario*, 601 F.3d at 126-27 (a state prisoner's ineffective assistance of counsel claim must be reviewed under a standard more deferential than simply whether that the state-court decision was incorrect).

[51] *Richter*, 131 S.Ct. at 786.

[52] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

pursuing issues that were clearly and significantly weaker."[53]  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[54]  The court must then consider those acts or omissions against "prevailing professional norms."[55]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[56]

Caswell has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen appeal strategy.  He presented no alternate attorney's determination challenging counsel's decision not to pursue certain issues. Caswell has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[57]

Based upon the record in this case, in particular the paucity of the "facts" presented by Caswell as to precise errors committed by appellate counsel and their effect, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence

---

[53] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks omitted)).

[54] *Strickland*, 466 U.S. at 690.

[55] *Id*.

[56] *Id*.

[57] *Id.* at 688.

presented in the State court proceeding."[58]   Nor, viewing the matter through the doubly-deferential lens of *Mirzayance* and *Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Caswell's case within the scope of *Andrade-Williams-Landrigan-Richter*; *i.e.*, the state court decision was not more than incorrect or erroneous, its application of clearly established law was not objectively unreasonable.   Caswell has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.   Caswell is not entitled to relief under his third ground.

Ground 5:  Introduction of Audio Recordings/Transcripts

Caswell contends that, because no pretrial audibility hearing was held, it was error to allow into evidence two audio recordings of conversations presumptively of the controlled substance sales and, because the prosecutor did not move the transcripts into evidence, it was error to allow the jury to review them.   The Appellate Division rejected Caswell's arguments:

> [. . . .]  Also contrary to [Caswell's] contention, County Court did not abuse its discretion in allowing the jury to view the transcripts of two audio recordings prepared by police officers with respect to the alleged drug sales.  The court properly advised the jury that the transcripts were not necessarily accurate and that it was for the jury to determine what was said during the recorded conversations.  The court also did not abuse its discretion in admitting the two audio recordings in evidence. The People laid a proper foundation for their admission inasmuch as a police officer testified that he listened to the transmitted conversations as they were being recorded, he later transferred the recorded conversations to the compact discs played for the jury, and he reviewed the recordings prior to trial to ensure that they were unaltered.[59]

---

[58] 28 U.S.C. § 2254(d).

[59] *Caswell*, 856 N.Y.S.2d at 339.

14

Initially, this Court notes that Caswell's contention *vis-a-vis* that the transcripts had been properly admitted differs substantially from his argument on direct appeal. On direct appeal, Caswell argued that the transcripts should not have been given to the jury because the trial court had failed to make a finding that the audio tape was audible, not that they had not been moved into evidence.[60] The record further reflects that, although the transcripts had not been admitted into evidence, they were submitted to the jury with, *as requested by defense counsel*, the admonition referred to by the Appellate Division.[61] No further objection was made. Thus, the claim that the transcripts had not been properly admitted into evidence was both unexhausted, i.e., not presented on the facts to the state courts on appeal, and waived by the failure to object to the transcripts being provided to the jury.[62]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[63] "The introduction of unfairly prejudicial evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[64] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review

---

[60] Docket No. 12-1 at 18.

[61] Docket No. 12-26 at 158-60.

[62] *See Downs v. Lape*, 657 F.3d 97, 102-04 (2d Cir. 2011) (holding that New York's contemporaneous objection rule to preserve appellate review, New York Criminal Procedure Law § 470.05[2], is an adequate and independent state procedural rule precluding review) (citations omitted).

[63] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[64] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998) (internal quotation marks and citation omitted).

of the wisdom of state evidentiary rules."[65]  In criminal actions, "[t]he States are free to provide

such procedures as they choose, including rules of evidence, provided that none of them infringes

a guarantee in the Federal Constitution."[66]  The Supreme Court has made clear that federal

habeas power does not allow granting relief on the basis of a belief that the state trial court

incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[67]

     In this context, the Supreme Court has defined the category of infractions that violate

fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill

of rights.[68]  For example, the Supreme Court has barred the introduction of evidence in State

criminal proceedings that violated the Fourth Amendment (search and seizure),[69] Fifth

Amendment (confessions),[70] Sixth Amendment (Confrontation Clause),[71] and (right to counsel).[72]

In deciding cases involving the Federal Rules of Evidence or federal evidentiary statutes, the

---

[65] *McGuire*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)) (internal quotation marks omitted).

[66] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[67] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[68] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[69] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[70] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[71] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*., 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[72] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

Supreme Court is acting in its supervisory capacity over the lower federal courts.[73]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[74]

This Court also notes that the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[75]

Caswell's arguments before both the state appellate courts and this Court are based upon alleged errors of state, not federal, law in the admission of the audio tapes.  Having failed to raise a question of constitutional dimension, Caswell is not entitled to relief under his fifth ground.

Ground 8:  Denial of Opportunity to Call Witnesses.

At trial, the confidential informant testified on cross-examination that she had known Caswell for three or four months prior to the date of the sales transactions at issue (May 2, 2005).  Caswell requested that a deputy sheriff be called to testify that Caswell had been incarcerated in the county jail during the period of December 27, 2004, to April 21, 2005.  The trial court denied Caswell's request on the basis that, under New York law, a cross-examiner is bound by the answers given on cross-examination and may not call a witness to impeach that witness on a

---

[73] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

[74] *Id.* (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

[75] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1)").

collateral matter.  Caswell argues that he should have been permitted to call the deputy to testify

as to Caswell's incarceration during the period the witness had allegedly known Caswell.

Caswell further argues that had *Darden* and *Wade* hearings been held,[76] the deputy could have

testified and the outcome would have been different.  The Appellate Division rejected Caswell's

argument, holding:

> The court properly denied [Caswell's] request to present the testimony of a witness who allegedly would impeach the credibility of the confidential informant who, by the time of trial, had been identified. "It is well established that the party who is cross-examining a witness[, here, the informant,] cannot ... call other witnesses to contradict [the informant's] answers concerning collateral matters solely for the purpose of impeaching [the informant's] credibility (*People v. Pavao*, 59 N.Y.2d 282, 288-89, 464 N.Y.S.2d 458, 452 N.E.2d 216)."  By failing to object to the court's ultimate *Sandoval* ruling, [Caswell] failed to preserve for our review his contention that the court's *Sandoval* ruling constitutes an abuse of discretion (citations omitted), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (citation omitted).[77]

Initially this Court notes that Caswell has not presented any argument in support of his

conclusory statement concerning the failure to hold *Darden* and *Wade* hearings, and the

applicability of those cases to the issue presented is as inexplicable as it is unexplained.  Caswell

"bears the burden of proving by a preponderance of the evidence that his constitutional rights

have been violated."[78]  His conclusory statements, unsupport by factual allegations, are

insufficient to establish that his constitutional rights were violated.  Without some basis upon

---

[76] Caswell's reference to *Darden* is presumably to *People v. Darden*, 313 N.E.2d 49 (N.Y. 1974) (a shorthand reference to a hearing under New York law to determine the validity of a warrantless search), *disapproved on other grounds by People v. Belton*, 50 N.Y.2d 447 (1980). *United States v. Wade*, 388 U.S. 218 (1967), is a shorthand reference to a hearing to determine whether a defendant's right to counsel at an identification procedure was honored.

[77] *Caswell*, 856 N.Y.S.2d at 339.

[78] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006).

18

which to find that it was necessary for the trial court to hold either a *Darden* or a *Wade* hearing,

granting a writ of habeas corpus in this case would be inappropriate.[79]

Turning to Caswell's contention that he should have been permitted to call the deputy to

impeach the informant, Caswell has not cited any federal authority for his position, and

independent research by this Court did not uncover any such authority.  Such authority as exists

supports the opposite conclusion.[80]  Because there is no holding of the Supreme Court on point,

"it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal

law.'"[81]  Caswell is not entitled to relief under his eighth ground.

---

[79] *Id.* (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support")).

[80] *See Rau v. United States*, 260 F. 131, 135-36 (2d Cir. 1919) (holding that, with respect to collateral matters inquired into for the first time by the government's attorney, the answers were binding on the government and could not be impeached by the government by extrinsic evidence), *overruled on other grounds by Nat'l City Bank v. Helvering*, 98 F.2d 93 (1938); *see also United States v. Purdy*, 144 F.3d 241, 345-46 (1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded."); *cf. Eze v. Senkowski*, 321 F.3d 110, 135 (2d Cir. 2003) (applying *Pavao* in a habeas case, held that the failure of defense counsel to object to the use by the prosecution of a wife's affidavit to impeach the testimony of the husband on a collateral issue made for the first time during the cross-examination, constituted ineffective assistance of counsel); *Zimmerman v. United States*, 289 F. 799 (2d Cir. 1923) (recognizing the rule in *Rau*, but distinguishing it under the facts presented).

[81] *Musladin*, 549 U.S. at 77 (alterations by the Court); *see Van Patten*, 552 U.S. at 127 (per curiam).

## V.  CONCLUSION AND ORDER

Caswell's First (actual innocence), Second (ineffective assistance of trial counsel), Sixth (prosecutorial misconduct), and Seventh (police misconduct) Grounds are unexhausted, and Caswell is not entitled to relief on any other ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[82]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[83]

The Clerk of the Court is to enter judgment accordingly.

Dated: October 10, 2012.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[82] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[83] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.1.